**UNITED STATES of America, Plaintiff,**

v.

**NATIONAL MEDICAL ENTERPRISES, INC. and NME Hospitals, Inc., Defendants.**

**No. CV–F–83–481 REC.**

United States District Court, E.D. California.

July 24, 1985.

Thomas L. Greaney, Richard H. Boote, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff.

Robert Fabrikant, Barry S. Landsberg, Casson, Calligaro & Mutryn, Washington, D.C., for defendants.

## ORDER OF DISMISSAL WITH PREJUDICE

COYLE, District Judge.

On Tuesday, July 16, 1985, subsequent to the commencement of the trial in the above-captioned matter, Robert Fabrikant of Casson, Calligaro & Mutryn, counsel for defendants, orally renewed his previous motion to dismiss this action for misconduct by plaintiff's counsel. Following an evidentiary hearing conducted in chambers on July 17, 1985 and the making of oral arguments on July 18, the court ruled from the bench that this action was dismissed with prejudice because of the misconduct by plaintiff's counsel with costs of trial awarded to the defendants and that this order would follow.

On July 11 and 12, the plaintiff called as its witness Sheila Yuter, the Director of Planning for St. Joseph's Hospital in Stockton, California. Ms. Yuter was examined and cross-examined as to various matters within her knowledge and expertise pertaining to the plaintiff's claims and the defendants' defenses thereto. Trial was recessed on Friday, July 12 to recommence on Tuesday, July 16 at the hour of 9:00 a.m. On Tuesday morning, July 16, counsel for the parties advised the court that they wished to discuss a matter between themselves and commence at 9:30 a.m. At approximately 9:20 a.m., the court was advised by hand delivered letter that the defendants were claiming misconduct by the government and requesting that the matter be dismissed with prejudice. Attached to the letter was a Declaration of Sheila Yuter.[1]

1. The letter of Robert Fabrikant reads as follows:

> Enclosed is a Declaration by Sheila Yuter, a copy of which has been hand-delivered to government counsel this morning. Ms. Yuter's Declaration sets forth misconduct by the government which, we respectfully submit, is even more egregious than that which precipitated the Court's earlier Orders.
> We believe that the misconduct at issue warrants dismissal with prejudice. Defendants would appreciate the opportunity to address this matter with the Court at the earliest possible moment.
> The Declaration of Sheila Yuter sets forth the following testimony:
> 1. I am the Director of Planning at St. Joseph's Hospital in Stockton, California, and I testified in this case on behalf of plaintiff on July 11 and 12, 1985.
> 2. On July 9, I visited Fresno, California for the purpose of offering testimony on behalf of plaintiff in this case. On July 9 and 10, I met with Mr. Richard Martin, one of plaintiff's attorneys, in order to review my proposed testimony. During one of those meetings Mr.

> Martin made certain unsolicited remarks, the substance of which was completely new to me.
> 3. Mr. Martin stated that defendants had made a 'payoff' to Mr. Harlyn Robinson and Dr. Delmar Tonge, two individuals involved in the decision to sell Modesto City Hospital ('MCH') to defendants. Mr. Martin said that one of the reasons defendants had been selected over Healthwest as the buyer of MCH was because of the 'payoff' to Mr. Robinson and Dr. Tonge. Mr. Martin then said that these 'payoffs' were in the form of consultancy contracts entered into at the time of the acquisition between defendants, Mr. Robinson and Dr. Tonge. Mr. Martin stated that these contracts called for the payment by defendants of 'big' consultancy fees to Mr. Robinson and Dr. Tonge. Mr. Martin further stated that until quite recently Mr. Robinson and Dr. Tonge had done nothing to earn the fees which have been paid to them by defendants, apart from some of their recent work in connection with preparing for this trial. Mr. Martin also stated that three of the persons involved in the

Thereafter, in open court defendants orally renewed their previous motions to dismiss with prejudice. Mr. Anthony E. Harris, counsel for the government, requested an evidentiary hearing and requested that Ms. Yuter be summoned to court to be questioned by the undersigned to which the defendants agreed. On July 17, testimony was elicited from Sheila Yuter as well as from Richard Martin, Thomas L. Greaney and Anne T. Goldstein, attorneys for the plaintiff. In addition, the court received in evidence a tape cassette of a memorandum dictated by Barry Landsberg of Casson, Calligaro & Mutryn and handwritten notes and previous drafts of Ms. Yuter's Declaration.

## FINDINGS OF FACT

After the testimony of Ms. Yuter on July 11 and 12, Mr. Fabrikant was concerned that she had not been as explicit in certain areas of her testimony as he had been led to believe by previous discussions with Ms. Yuter. As a result, Mr. Fabrikant made arrangements to meet with Ms. Yuter on July 13, a Saturday, to discuss her prior testimony and anticipated testimony as a witness on behalf of National Medical Enterprises. At the completion of the discussion relating to her testimony, she was inquired of by Mr. Fabrikant as to whether or not there was anything else that she felt Mr. Fabrikant should know. Without any prompting or suggestions by Mr. Fabrikant concerning misconduct on behalf of counsel for the plaintiff, Ms. Yuter related generally the information contained in her Declaration. The testimony received, including Ms. Yuter's Declaration, pertinent to the motion is generally as follows: In the course of reviewing Ms. Yuter's anticipated testimony with Mr. Martin, Mr. Martin advised Ms. Yuter that Mr. Harlyn Robinson and Dr. Delmar Tonge, as well as a third person whose name was not revealed, had been "paid off" and were receiving consulting fees for which they had done no work until just recently. The purpose of the payoff and fees was to effect the sale of Modesto City Hospital to NME. Mr. Robinson and Dr. Tonge are both former principals of Modesto City Hospital. The words used in describing payments to Mr. Robinson and Dr. Tonge such as "big" payoff and "taken care of" were the words of government counsel. Ms. Yuter had no information about nor was she to testify concerning any aspects of the negotiations and ultimate acquisition of Modesto City

decision to sell MCH to defendants were to be 'taken care of' by defendants, but Mr. Martin identified only two of those persons, Mr. Robinson and Dr. Tonge. Mr. Martin repeated these remarks to me again before I commenced my testimony in this case.

4. When Mr. Martin made these remarks to me I thought then, and believe now, that it was highly improper for him to do so. His remarks bore no relationship to the specific areas covered by my proposed testimony, and Mr. Martin's statements would have biased me against the defendants in this case, but for the fact that I know Harlyn Robinson to be a person of the utmost personal and professional integrity. I was particularly taken aback by Mr. Martin's remarks because of my high regard for Mr. Robinson and because it was not information which, even if true, should have been made available to me by a government attorney. I did not respond to Mr. Martin's comments because I was deeply disturbed and was at a loss for words. I believe that Mr. Martin's comments reflected his desire to convey the impression that defendants, Mr. Robinson and Dr. Tonge had acted improperly, and his purpose in making those statements was to persuade me of the correctness and strength of the government's position.

5. I should nevertheless like to note that I cannot state with certainty that Mr. Martin intended to influence my testimony, although he was not then aware of my knowledge and opinion of Mr. Robinson. I am familiar with Dr. Tonge, but I have never had any personal contact with him.

6. This Declaration was prepared by Robert Fabrikant and Barry Landsberg. They have read several drafts of this Declaration to me over the telephone, and I have made certain changes, all of which have been incorporated into the Declaration. I have carefully reviewed this Declaration and am satisfied that it accurately and fully sets forth the substance of the above described events.

7. I have fully reviewed this document with outside counsel to St. Joseph's Hospital who has advised me on its content and significance. Changes made to clarify my position resulted from that conversation.

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Hospital by the defendant NME. Ms. Yuter ultimately concluded the purpose for volunteering of this information, which was personally distressing to her, was to impress upon her the rightfulness of the government's case by furnishing information that went beyond the antitrust implications.[2] In addition, on the evening of July 9 while in Fresno, some of the attorneys for the Justice Department, including Anne T. Goldstein, came into Ms. Yuter's room. A conversation was commenced by Ms. Goldstein in which Ms. Goldstein stated that she, Ms. Yuter, was the only female witness in the case. She was corrected by Mr. Martin who said there were two other female witnesses. Thereafter, Ms. Goldstein referred to NME as some kind of a disreputable company. Ms. Goldstein, who had never met Ms. Yuter, then stated that there weren't any women at the corporate level of NME and stated, "What kind of a company would name its HMO 'PMS'?"[3] These statements were made directly to Ms. Yuter and were felt by Ms. Yuter to be inappropriate. It was Ms. Yuter's opinion that Ms. Goldstein was attempting to establish a personal rapport with her.

## CONCLUSION

Ms. Yuter was advised by counsel for plaintiff of alleged misconduct by NME in the purchase of Modesto City Hospital for the purpose of influencing her testimony and convincing her that the position of the government in the case in which she was to be a witness was correct. The information furnished to Ms. Yuter was not pertinent or relevant to the subject matter about which Ms. Yuter was expected to testify. Further, Ms. Yuter was advised prior to her testifying that NME was a disreputable organization. There was no issue in the action brought by plaintiff concerning defendants' personnel or hiring practices. Ms. Yuter felt that said statements were made to influence her and put the defendant in a bad light.

## PRIOR ORDERS

This is not the first time that plaintiff has been before the court on a motion to dismiss for misconduct of counsel for the plaintiff. On May 18, 1984 this court issued its Order relating to the conduct of counsel in contacting witnesses, causing "unwarranted confusion and misunderstandings." The above categorization of what occurred was favorable to the government in describing the circumstances and the court was and is of the opinion that the circumstances complained of came about as a result of overreaching by the government. On May 21, 1985 the court once again rendered an Order that statements made by government counsel during depositions were highly improper and had the potential of influencing witnesses in their responses to appropriate questions on discovery. However, even though the court felt that it had previously made its opinion clear as to the expected conduct of counsel, the court did not dismiss the complaint at that time and allowed the government to proceed with its case, imposing only monetary sanctions and stating "even though the court is not inclined to dismiss this action at the present time, defendants have an obligation to bring conduct of the type set forth to the court's attention." Keeping in mind the court's comments set forth in its two prior orders as to the conduct of the government, the court can only conclude that the conduct the subject of this order constitutes yet another attempt by plaintiff's counsel to improperly influence a neutral witness for the plaintiff. The remarks relating to the method in which NME purchased the Modesto City Hospital and the derogatory statements relating to its personnel policies can only have been made for this purpose since in one instance they had no relevance to Ms. Yuter's testimony and, in the other instance, they had no relevance to the case. The making of

---

**2.** There is nothing in the record to indicate the truth or falsity of any such activities on behalf of NME, Dr. Tonge or Mr. Robinson.

**3.** Ms. Goldstein intended "PMS" to refer to premenstrual syndrome and Ms. Yuter understood the reference in that context.

these statements clearly is misconduct by government's counsel and while the court was reluctant to share defendants' concern with what was occurring off the record in connection with the previous motions to dismiss for misconduct, that reluctance is no longer present. The defendants have been and are faced with repeated attempts to improperly influence witnesses in giving testimony in a matter of great importance. While the government argues that there has been no showing that the attempts were successful, such is no longer the issue. Government's counsel will not be given a free rein to attempt to influence witnesses and if they happen to be caught where the witness has in fact been influenced, only then will the court assure that such activities will not continue.

ACCORDINGLY, IT IS ORDERED that this action is dismissed with prejudice because of misconduct by plaintiff's counsel, the defendants to recover costs of suit.

LET JUDGMENT BE ENTERED ACCORDINGLY.